IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:21CR172** |
| v. | |
| ANGELA MICHELLE BROWN, | **ORDER** |
| Defendant. | |

This matter is before the Court on defendant Angela Michelle Brown's ("Brown") *pro se* Motion for Sentence Reduction (Filing No. 47) under 18 U.S.C. § 3582(c)(1)(A), often referred to as compassionate release. *See United States v. Totaro*, 91 F.4th 1263, 1264 (8th Cir. 2024).

## I.   BACKGROUND

Brown was originally charged in a three-count Indictment (Filing No. 1) on June 17, 2021. Count I alleged a conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) and 846. Count II charged Brown with knowingly and intentionally possessing with intent to distribute 5 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Count III charged Brown with knowingly using and carrying a firearm during and in relation to and knowingly possessing such firearm in furtherance of drug-trafficking crimes described in Counts I and II of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A).

On December 20, 2021, Brown pleaded guilty to Counts I and III of the Indictment under a written plea agreement. On March 18, 2022,[1] Brown was sentenced to a term of

---

[1]Count II was later dismissed on motion of the government, consistent with the written plea agreement.

120 months on Count I and 60 months on Count III, to be served consecutively to the sentence imposed on Count I, for a total of 180 months.[2]  Brown received a supervised release term of 5 years on each of Counts I and III, to be served concurrently.  Brown did not appeal her conviction or sentence.

On March 1, 2024, Brown filed her motion for sentence reduction under Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G. or "Guidelines").  That motion was denied (Filing No. 43).  Brown then filed her first motion under § 3582(c)(1)(A) seeking compassionate release (Filing No. 45).  That motion was denied on September 23, 2024 (Filing No. 46), because Brown failed to demonstrate that she had met the statutory prerequisites for judicial review.

On November 10, 2025, the current motion (Filing No. 47) was filed.  Upon the filing of that motion, the Court directed the U.S. Probation and Pretrial Services Office to investigate Brown's request and file a report upon completion of that investigation.  In addition, the Court appointed the Federal Public Defender for the District of Nebraska to represent Brown to determine whether "extraordinary and compelling reasons to reduce her term of imprisonment" existed (Filing No. 48).  The Compassionate Release Investigation Report was filed on January 12, 2026 (Filing No. 50) (including the voluminous medical records submitted as part of the report), and the Court has reviewed the original *pro se* motion (Filing No. 47) as well as briefing both from court-appointed counsel (Filing No. 54) and from the United States Attorney's Office (Filing No. 57).  The matter is now ripe for review.

## II.    DISCUSSION

As amended by the First Step Act, § 3582(c)(1)(A)(i) authorizes Brown to ask the Court to "reduce [her] term of imprisonment for internal "extraordinary and compelling reasons" 30 days after the warden of the facility where the defendant is incarcerated

---

[2]The consecutive sentences on Counts I and III were both mandatory-minimum sentences (10 years to life on Count I, and 5 years on Count III).

receives a request for relief by the defendant. *See United States v. Sims*, 87 F.4th 917, 919 (8th Cir. 2023) (noting a district court has discretion to "grant or deny relief" when those statutory requirements are met), *United States v. Stogsdill,* 2026 WL 395283 at *1 (E.D. Mo., Febr. 12, 2026).

Brown provides evidence that she has properly presented her request for compassionate release to the warden of her facility and that the request was denied. The Court will therefore proceed to the merits of the motion.

Brown, who is fifty years old, claims her life is endangered by her continued incarceration. She claims, and no one disagrees, that she suffers from "a host of chronic medical conditions that impact her heart, lungs and legs" for which she is regularly treated or even hospitalized. Brown is incarcerated in a Federal Medical Facility ("FMC Carswell"), where she receives ongoing medical care, both within that facility, and when necessary, in nearby hospitals.

In evaluating her request for compassionate release, the Court considers the sentencing factors set forth in 18 U.S.C. § 3553(a); 18 U.S.C. § 3582(c)(1)(A); and U.S.S.G. § 1B1.13(a). The Court has done so here.

The United States Sentencing Commission has provided guidance (as Congress has directed) on what the Court should consider in ruling on a compassionate-release request.

Extraordinary and compelling reasons under the Guidelines are defined at § 1B1.13:

(b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

(A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

3

(B)   The defendant is—

    (i)    suffering from a serious physical or medical condition,

    (ii)    suffering from a serious functional or cognitive impairment, or

    (iii)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)   The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)   The defendant presents the following circumstances—

    (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii) such risk cannot be adequately mitigated in a timely manner.

Brown is not suffering from a terminal illness as that term is defined under § 1B1.13(b)(1)(A). Her situation is more properly evaluated under § 1B1.13(b)(1)(B), as she is certainly suffering a number of serious physical conditions. That much is not disputed. However, there is no evidence that those "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

The volume of medical records detail her many medical issues and support that she frequently needs medical intervention "within the federal medical facility and in nearby

hospitals." However, those same records establish that Brown is receiving the necessary and adequate medical care. *See* U.S.S.G. § 1B1.13(b)(1)(C).

Brown then generally argues that she is in danger of being exposed to "influenza, COVID-19, measles, or some other respiratory virus," seeking relief under § 1B1.13(b)(1)(D). While Brown may be more susceptible to complications due to a respiratory ailment contracted at the BOP facility, there is no evidence that the risk of exposure is higher at FMC Carswell than in the general public. Moreover, there is no current evidence of an "ongoing outbreak of infectious disease" or a "declared ongoing health emergency."

Another factor to be considered is what would happen if Brown were to be released, a so-called "release plan." A review of Brown's submission (and that of her court-appointed counsel) indicates Brown has no release plan apart from hoping to be placed at a "halfway house or a sober-living house." Based on the record and the current release plan, there is no evidence that, if released, Brown would receive more medical care than she is now receiving.

Again, the Court conducted an individualized inquiry, as it must, of the factors under § 3553(a) and the guidance under § 1B1.13, and finds that relief should be denied. *United States v. Felters*, 163 F.4th 513, 515 (8th Cir. 2026).

Given Brown's charges of conviction (including a firearms charge), her criminal history, and the fact that she has only served approximately 35% of her sentence, and for all the reasons set forth above, Brown's motion is denied.

IT IS SO ORDERED.

Dated this 17th day of March 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge